UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
ROWE PLASTIC SURGERY OF NEW JERSEY,
L.L.C. & NORMAN MAURICE ROWE, M.D.,
M.H.A., L.L.C.,

                              Plaintiffs,                          **REPORT AND**
                                                                  **RECOMMENDATION**
              -against-                                           23-CV-2599 (JS) (ARL)

AETNA LIFE INSURANCE COMPANY,

                              Defendant.
------------------------------------------------------------------X

**LINDSAY, Magistrate Judge:**

Plaintiff Rowe Plastic Surgery of New Jersey, L.L.C. ("RPSNJ") and Norman Maurice

Rowe, M.D., M.H.A., L.L.C., ("Rowe LLC" and, collectively, "Plaintiffs") bring this action

against Aetna Life Insurance Company ("Aetna" or "Defendant") for additional reimbursement

for an out-of-network surgery their employees allegedly rendered to patient A.A.  Before the

Court, on referral from District Judge Seybert, is the motion to dismiss for failure to state a claim

pursuant to Federal Rules of Civil Procedure ("Rule") 12(b)(2) filed by Aetna on May 9, 2025.

ECF No. 33.  For the reasons stated below, the Court respectfully reports and recommends that

the motion to dismiss for failure to state a claim be granted.

## BACKGROUND

### I.      Factual Background

The following facts are drawn from the Complaint, unless otherwise noted, and are

accepted as true for purposes of the instant motion. *Samuels v. Air Transp. Local 504*, 992 F.2d

12, 15 (2d Cir. 1993). These facts, however, do not constitute findings of fact by the Court. *See*

*Colvin v. State Univ. College at Farmingdale*, No. 13-CV-3595 (SJF)(ARL), 2014 U.S. Dist.

LEXIS 85678, 2014 WL 2864224, at *1 n.1 (E.D.N.Y. June 19, 2014).  In addition, the Court

has considered documents that are incorporated by reference or integral to the complaint.

"This case, and the approximately 30 other similar lawsuits, are based on the same

theory, phone calls confirmed that the insurance company would pay at least 80% (in some

instances 90%) of a reasonable and customary fee, and the conversations created enforceable

contracts that were breached." *Rowe Plastic Surgery of N.J., L.L.C. v. Aetna Life Ins. Co.*, 23-

CV-3636-SJB-LKE, 2025 U.S. Dist. LEXIS 131381, 2025 WL 1907005, at *1 (E.D.N.Y. July

10, 2025). [1]

---

[1] For reference, the following cases have been decided in favor of similar defendants either on motions to amend or to dismiss: *Rowe Plastic Surgery of New Jersey, L.L.C. v. Aetna Life Ins*. Co., No. 23-cv-8521 (JSR), 705 F. Supp.3d 194 (S.D.N.Y. 2023) ("*Rowe* I"); *Rowe Plastic Surgery of New Jersey, L.L.C. et al. v. Aetna Life Ins. Co.,* No. 23-cv-8529 (DLC), 2024 U.S. Dist. LEXIS 17897, 2024 WL 382143 (S.D.N.Y. Feb. 1, 2024) ("*Rowe* II"); *Norman Maurice Rowe M.D., M.H.A., L.L.C., et al. v. UnitedHealthcare Service, LLC*, No. 23-cv-516 (OEM)(ARL), 2024 U.S. Dist. LEXIS 170425, 2024 WL 4252045 (E.D.N.Y. Sept. 20, 2024) ("*Rowe* III"); *Rowe Plastic Surgery of New Jersey, L.L.C. et al. v. UnitedHealthcare, et al.*, No. 23-cv-4352 (AMD)(JAM), 2024 U.S. Dist. LEXIS 174896, 2024 WL 4309230 (E.D.N.Y. Sept. 26, 2024) ("*Rowe* IV"); *Rowe Plastic Surgery of New Jersey, L.L.C. v. Aetna Life Ins. Co.,* No. 23-8083, 2024 U.S. App. LEXIS 24523, 2024 WL 4315128 (2d Cir. Sept. 27, 2024) ("*Rowe* V"); *Norman Maurice Rowe, M.D., M.H.A., L.L.C. v. Aetna Health and Life Ins. Co.*, No. 22-cv-9427(AT)(OTW), 2025 WL 618556 (S.D.N.Y. Feb. 25, 2025) ("*Rowe* VI"); *Norman Maurice Rowe M.D., M.H.A., L.L.C., et al., v. Aetna Life Ins. Co.*, No. 23-cv-8527 (CM)(OTW), 2025 U.S. Dist. LEXIS 38856, 2025 WL 692051 (S.D.N.Y. Mar. 4, 2025) ("*Rowe* VII"); *Rowe Plastic Surgery of New Jersey LLC v. Aetna Health and Life Ins. Co.*, No. 23-cv-8504 (JLR)(OTW), 2025 WL 1004730 (S.D.N.Y. Apr. 2, 2025) ("*Rowe* VIII"); *Rowe Plastic Surgery of New Jersey, LLC v. Aetna Health and Life Ins. Co.*, No. 22-cv-7900 (JLR)(OTW), 2025 WL 1000147 (S.D.N.Y. Apr. 3, 2025) ("*Rowe* IX"); *Rowe Plastic Surgery of Long Island, P.C. v. United Health Care,* No. 23-CV-04541 (JMA) (JMW), 2025 U.S. Dist. LEXIS 86592, 2025 WL 1715445 (E.D.N.Y. May 6, 2025) ("*Rowe* X); *Rowe Plastic Surgery of N.J., L.L.C. v. Aetna Life Ins. Co.*, No. 22-cv-7900, 2025 U.S. Dist. LEXIS 108023, 2025 WL 1603919 (S.D.N.Y. June 6, 2025)("*Rowe* XI"); *Rowe Plastic Surgery of N.J., L.L.C. v. Aetna Life Ins. Co.*, No. 22-cv-8713, 2025 U.S. Dist. LEXIS 108035, 2025 WL 1603920 (S.D.N.Y. June 6, 2025)("*Rowe* XII"); *Rowe Plastic Surgery of N.J., L.L.C. v. Aetna Life Ins. Co.*, No. 1:23-cv-08504 (JLR) (OTW), 2025 U.S. Dist. LEXIS 108211 (S.D.N.Y. June 6, 2025) ("*Rowe* XIII"); *Rowe Plastic Surgery of N.J., L.L.C. v. Aetna Ins. Co.*, No. 23-CV-8514, 2025 U.S. Dist. LEXIS 121846, 2025 WL 1797219 (S.D.N.Y. June 26, 2025)("*Rowe* XIV"); *Rowe Plastic Surgery of N.J., L.L.C. v. Aetna Life Ins. Co.* No. 23 Civ. 8140 (JGK), 2025 U.S. Dist. LEXIS 122813, 2025 WL 1786416 (S.D.N.Y. June 27, 2025) ("*Rowe* XV"); *Rowe Plastic Surgery of N.J., L.L.C. v. Aetna Life Ins. Co.*, 23-CV-3636-SJB-LKE, 2025 U.S. Dist. LEXIS 131381, 2025 WL 1907005 (E.D.N.Y. July 10, 2025) ("*Rowe* XVI"); *Rowe Plastic Surgery of N.J., L.L.C. v. Aetna Life Ins. Co.*, No. 23 Civ. 3632 (LKE), 2025 U.S. Dist. LEXIS 134663, 2025 WL 1940325 (E.D.N.Y. July 15, 2025) ("*Rowe* XVII"); *Rowe Plastic Surgery of N.J., L.L.C. v. Aetna Life Ins. Co.,* No. 23 Civ. 6206 (SHS) (OTW), 2025 U.S. Dist. LEXIS 150587, 2025 WL 2218097 (S.D.N.Y. Aug. 5, 2025) ("*Rowe* XVIII"); *Rowe Plastic Surgery of New Jersey, L.L.C. v. Aetna Life Ins. Co.,* No. 23-cv-8509 (SHS) (OTW), 2025 U.S. Dist. LEXIS 152415, 2025 WL 2242507, at *2 (S.D.N.Y. Aug. 6, 2025) ("*Rowe* XIX"); *Rowe Plastic Surgery of N.J., L.L.C. v. Aetna Health & Life Ins. Co.*, No. 22 Civ. 4755 (MKB), 2025 U.S. Dist. LEXIS 165987, 2025 WL 2452406 (E.D.N.Y. Aug. 26, 2025) ("*Rowe* XX"); *Rowe v. Aetna Life Ins. Co.*, 23 Civ. 08512 (LLS), 2025 U.S. Dist. LEXIS 180468, 2025 WL 2644203 (S.D.N.Y. Sep. 15, 2025) ("*Rowe* XXI"); *Rowe v. Aetna Life Ins. Co.*, No. 23 Civ. 8297 (LGS), 2025 U.S. Dist. LEXIS 180558, 2025 WL 2644190, at *1 (S.D.N.Y. Sept. 15, 2025) ("*Rowe*

Plaintiff RPSNJ is a Limited Liability Company, and its sole member is Norman Rowe. ECF No. 28, Am. Compl. at ¶ 1. Norman Rowe is domiciled in New York. *Id*. Rowe LLC is a Limited Liability Company, and its sole member is Norman Rowe. *Id.* at ¶ 2. RPSNJ and Rowe LLC are assignees of A.A., a patient who needed bilateral reduction mammaplasty because she was suffering from Macromastia. *Id.* at ¶¶ 8, 13. Defendant Aetna is a subsidiary of CVS Health Corporation, a Delaware corporation with its headquarters in Connecticut. *Id*. at ¶ 3. Plaintiffs allege that RPSNJ, Rowe LLC, and Aetna are participants in the healthcare industry. *Id*. at ¶ 6. RPSNJ and Rowe LLC and the services they render are considered non-network ("OON") by Aetna. *Id*. at ¶ 9.

Plaintiffs allege that on August 31, 2021, Aetna orally assured RPSNJ and Rowe LLC that the price it would be pay for A.A.'s surgery by out-of-network providers would be equal to the 80 percent of reasonable and customary fee schedule.[2] *Id*. at ¶ 14. According to Plaintiffs "[t]he 80 percent of reasonable and customary fee schedule is not the price term for [non-network] services dictated by A.A.'s health plan." *Id*. at ¶ 15. Plaintiffs further allege that "[u]sing the 80 percent of reasonable and customary fee schedule, the unit price for billing code bilateral reduction mammaplasty was $75,000" and that "the total price of the services rendered by RPSNJ and Rowe LLC using the "80 percent Reasonable and Customary" fee schedule was $130,500.00." *Id*. at ¶¶ 16-17. Plaintiffs contend that "[t]he oral communications between RPSNJ, Rowe LLC, and Aetna between August 31, 2021, and July 12, 2022 [sic], establish the

---

XXII"); *East Coast Plastic Surgery, P.C. v. Aetna Health & Life Ins. Co*., No. 25-cv-6136 (ER), 2025 U.S. Dist. LEXIS 223964, 2025 WL 3168172 (S.D.N.Y. Nov. 13, 2025) ("*Rowe* XXIII"); *Rowe Plastic Surgery of Long Island, P.C. v. Aetna Life Ins. Co*., 22 Civ. 9328 (JPC), 2025 U.S. Dist. LEXIS 230866, 2025 WL 3268083 (S.D.N.Y. Nov. 24, 2025) ("*Rowe* XXIV"); *Rowe v. Aetna Health & Life Ins. Co*., No. 22-CV-4870 (NRM) (TAM), 2026 U.S. Dist. LEXIS 10373 (E.D.N.Y. Jan. 16, 2026)("*Rowe* XXV").

[2] Throughout the Amended Complaint Plaintiffs refer to the initial call as occurring on August 31, 2021, however, Defendant has provided the transcript of a call from August 3, 2021, and Plaintiffs in opposition to the motion to dismiss consistently refer to the call as occurring on August 3, 2021. For purposes of this report and recommendation, the undersigned has used August 3, 2021 as the operative date.

parties had a meeting of the minds that bilateral reduction mammaplasty was a medically necessary surgery for A.A., the surgeons performing the surgery, and the location the surgery was to rendered."[3] *Id.* at ¶ 19.  Plaintiffs also claim that "[i]n one correspondence Aetna said, *inter alia*, in sum and substance, the member's plan provides coverage for charges that are reasonable and appropriate; and in another correspondence Aetna said the member's plan allows up to 400% of the Medicare allowable rate for covered charges. Because Aetna negotiated to pay the reduction mammaplasty at issue using the '80 percent Reasonable and Customary' fee schedule, both statements evidence Aetna's intent not to be bound by the terms of A.A.'s health plan in its agreement with Plaintiff." *Id.* at ¶ 23. Further, Plaintiffs argue that "Aetna was expressly and contractually obligated to A.A. to price OON services using a different term, which term is in the exclusive knowledge of Aetna but can be ascertained via discovery." *Id.* at ¶ 87.

Defendant has provided a transcript of the call, which, as discussed below, the court will consider on this motion to dismiss.  The August 3, 2021 call transcript shows that, pre-surgery, a representative of Plaintiffs, identified as Abigail, called Defendant's customer service line to obtain benefits and coverage information under A.A.'s plan for outpatient surgery. Petitt Decl., ¶ 6, Exh. A. The call was handled by Jason, who identified himself as a "customer advocate." *Id.*, at 2:3-4. Abigal gave the provider's name and tax identification number. *Id.*, 2:18-21. Jason then asked, "And are you calling on behalf of patient named [A.A.]?" *Id.*, 2:23-24. Abigal confirmed she was calling on behalf of A.A. *Id.*, 3:3. Jason then asked "[i]s this for claims or benefits, and Abigail stated the call was for "benefits." (*Id.*, 3:3, 3:8). Jason then asked for service type and

---

[3] The dates provided by Plaintiffs in paragraph 19 do not correspond to the rest of the allegations in the Amended Complaint.  For example, in paragraphs 73-76 Plaintiffs detail several additional calls between Plaintiffs and Defendant occurring on September 13, September 17 and December 10.

procedure code, and Plaintiffs' employee provided CPT Code 19318 for "outpatient surgery done in a hospital, billing as a professional." *Id.*, 3:16-18. Jason explained that the procedure required authorization and that the "benefit coverage, the in-facility being the professional. That it's 100% after deductible, no copay." *Id.*, 4:2-6. Abigail then requested the in-network and out-of-network benefits. *Id.*, 4:7, 5:15-16. Jason recounted them: (1) in-network benefits for outpatient surgery professional charges were 100 percent after a $250 deductible, which had been met, *id.*, 4:8-5:1; (2) out-of-network benefits for outpatient surgery professional charges were "70% after deductible with $800 deductible," *id.,* 5:20-21; and (3) a $3,000 out-of-pocket limit, including copays and deductibles, with $1,315.42 accumulated. *Id.*, 5:22-6:4. Abigail asked, "Is this plan self-funded or fully funded?" and was told "self-funded plan." *Id.*, 6:8-10. Abigail asked whether this was A.A.'s primary insurance, and Jason confirmed A.A. had "no other medical coverage." *Id.*, 6:11-16. Abigail next asked, "… for the FAIR health rate, is there a usual[,] customary[,] and reasonable rates or Medicare rates?" *Id.*, 6:18-20. Jason responded: "[f]or out-of-network, that will be 80% reasonable and customary." *Id.*, 6:21-22.

Plaintiffs performed the surgery on December 15, 2021. ECF No. 28, Am. Compl. at ¶ 20. According to Plaintiffs, using the "80 percent Reasonable and Customary" fee schedule, Defendant should have paid $130,500.00. *Id.* at ¶ 78. Aetna paid only $9,148.51. *Id.* at ¶ 22. Based upon the foregoing facts, Plaintiffs assert claims for breach of contract (First Cause of Action), promissory estoppel (Second Cause of Action), unjust enrichment (Third Cause of Action), fraudulent inducement (Fourth Cause of Action), and conversion (Fifth Cause of Action).

## II.    Procedural History

5

Plaintiff commenced this action by filing a complaint in New York Supreme Court on February 28, 2023. The action was removed to this Court on April 5, 2023. ECF No. 1. Defendant answered the Complaint on May 12, 2023. ECF No. 6. A scheduling order, setting the deadline for the completion of discovery and dispositive motions was entered by this Court on September 26, 2023. ECF No. 14. By letter dated January 5, 2024, Defendant sought permission from Judge Seybert to move for summary judgment. ECF No. 16. Plaintiffs responded to the motion, requesting motion practice be held in abeyance, pending decisions from the Second Circuit in *1134 Park Avenue Podiatric Care, P.L.L.C. v. Cigna Health and Life Insurance Company*, No. 23-1134-CV; and *Rowe Plastic Surgery of New Jersey, L.L.C. v. Aetna,* No. 23-8083-CV. ECF No. 17. By order dated February 28, 2024, District Judge Seybert stayed this action pending resolution of the two cases noted above. ECF No. 20. Following decisions by the Second Circuit in *Park Ave. Podiatric Care, P.L.L.C. v. Cigna Health & Life Ins. Co.* ("Park Ave."), No. 23-1134-cv, 2024 U.S. App. LEXIS 13227, 2024 WL 2813721 (2d Cir. June 3, 2024) and *Rowe Plastic Surgery of N.J., L.L.C. v. Aetna Life Ins. Co.*("*Rowe* V"), No. 23-8083-cv, 2024 U.S. App. LEXIS 24523, 2024 WL 4315128 (2d Cir. Sept. 27, 2024) the stay was lifted by Judge Seybert on October 15, 2025. On October 21, 2024, this matter was referred to mediation.

On November 12, 2024, Defendant again filed a premotion conference letter, seeking permission to move for judgment on the pleadings and for a stay of discovery during the pendency of such motion. ECF No. 25. In response, Plaintiffs sought permission to file an amended complaint. ECF No. 26. By order dated November 21, 2024, Judge Seybert granted Plaintiffs permission to file an amended complaint and denied Defendant's request for a stay of discovery, without prejudice to refiling.

6

Plaintiffs filed an Amended Complaint on December 11, 2024. ECF No. 28. Defendant filed a letter seeking permission to file a motion to dismiss the Amended Complaint on January 13, 2025. ECF No. 29. Plaintiffs responded. ECF No. 30. On February 19, 2025, Defendant filed a motion to stay discovery pending resolution of the motion to dismiss. ECF No. 31. By order dated February 24, 2025, Judge Seybert granted Defendant's request for permission to file a motion to dismiss the Amended Complaint and set a briefing schedule on the motion. By order dated March 28, 2025, this Court granted Defendant's motion to stay discovery and mediation pending a decision on the motion to dismiss.

Defendant's motion to dismiss, Plaintiff's response thereto and Defendant's reply were filed on May 9, 2025. ECF No. 33. Judge Seybert referred the motion to the undersigned for a Report and Recommendation on October 9, 2025.

## DISCUSSION

### I. Standard of Law

To survive a motion to dismiss under Rule 12(b)(6), a complaint must allege a plausible set of facts sufficient "to raise a right to relief above the speculative level." *See Swiatkowski v. Citibank*, 745 F. Supp. 2d 150, 162 (E.D.N.Y. 2010), aff'd, 446 F. App'x 360 (2d Cir. 2011) (citing *Operating Local 649 Annuity Trust Fund v. Smith Barney Fund Mgmt. LLC,* 595 F.3d 86, 91 (2d Cir. 2010)). The Supreme Court clarified the appropriate pleading standard in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), in which the court set forth a two-pronged approach to be utilized in analyzing a motion to dismiss. District courts are to first "identify [ ] pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* at 679. Though "legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id*. Second, if a complaint contains "well-pleaded factual allegations, a court should

assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a [d]efendant has acted unlawfully." *Id.* at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556-57 (2007) (internal citations omitted)).

"A court considering a motion to dismiss under Rule 12(b)(6) generally limits its review 'to the facts as asserted within the four corners of the complaint, the documents attached to the complaint as exhibits, and any documents incorporated in the complaint by reference.'" *Florimon v. Allstate Ins. Co.,* 616 F. Supp. 3d 180, 185 (D. Conn. 2022) (citing *McCarthy v. Dun & Bradstreet Corp.,* 482 F.3d 184, 191 (2d Cir. 2007)). However, "[w]here a document is not incorporated by reference, the court may nevertheless consider it where the complaint 'relies heavily upon its terms and effect,' thereby rendering the document 'integral' to the complaint." *Nicosia v. Amazon.com, Inc.,* 834 F.3d 220, 230–31 (2d Cir. 2016). *Id.* This has been interpreted broadly to include any document attached to the complaint, any statements or documents incorporated in the complaint by reference, any document on which the complaint heavily relies, and anything of which judicial notice may be taken. *See Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152-53 (2d Cir. 2002). The Court may also "consider court documents or matters of public record at the motion to dismiss stage where both parties had notice of their contents and the documents are integral to the complaint." *Koch v. Christie's Int'l PLC*, 785 F. Supp. 2d 105, 112 (S.D.N.Y. 2011), aff'd, 699 F.3d 141 (2d Cir. 2012); *Silver Line Bldg. Prods. LLC v. J-Channel Indus. Corp.*, 12 F. Supp. 3d 320, 322-23 & n.1 (E.D.N.Y. 2014) (taking judicial notice of "similar lawsuits" filed by patent holder against other defendants).

## II.    Analysis

### a.  Documents Submitted by Defendant in Support of Motion

In support of its motion to dismiss, Defendant submits (1) a certified transcript of the August 3, 2021 benefits verification call (Petitt Decl., Exh. A); and (2) a copy from 2021 of a summary of a health benefits plan sponsored and funded by Memorial Sloan Kettering Cancer Center, that, according to Aetna, and based on Aetna's business records, was the plan providing coverage to A.A. (the "Plan"). Petrozelli Decl., Exh. 1. Neither of these documents were attached to the Amended Complaint.

The transcript of the August 3, 2021 call is plainly integral to the Amended Complaint, which "relies upon the 'terms and effect' of the phone call as the bases for the entire lawsuit." *Rowe* I, 705 F.Supp.3d at 200 (quoting *Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.*, 623 F.3d 69, 72 (2d Cir. 1995)). Plaintiff does not contest consideration of the transcript of the call and has cited the transcript throughout their opposition to the motion to dismiss. Numerous courts considering the pending *Rowe* cases have found that the transcript of the call to Defendant is integral to the complaint as Plaintiffs "so heavily rely on the call terms in making their allegations." *See, e.g., Rowe* XVII, 2025 U.S. Dist. LEXIS 134663, 2025 WL 1940325 (concluding that the call transcript was incorporated by reference in the complaint); *Rowe* XX, 2025 U.S. Dist. LEXIS 165987, 2025 WL 2452406 ("The Court will also consider a call transcript submitted by defendants because the representations made on the call are the basis for this lawsuit."); *Rowe* XIV, 2025 U.S. Dist. LEXIS 121846, 2025 WL 1797219 ("[t]he Court considers the transcript as integral to Plaintiffs' Amended Complaint without converting the motion into one for summary judgment under Rule 56"). Thus, the undersigned recommends that

9

the call transcript, submitted as an exhibit to Defendant's motion to dismiss, be considered in the context of this motion to dismiss.

Turning next to the Plan summary submitted by Defendant, Plaintiffs argue that the Plan should not be considered by the Court because it is not integral to the Amended Complaint and because "the sponsoring affidavit fails to establish the plan document is an exception to rule against hearsay." [4] Pl. Opp. at 20-23.[5] The Second Circuit has held that a plan may be integral because the Amended Complaint "presupposes the existence of a relationship between [the claims administrator] and [the patient] through a health insurance plan." *Park Ave. Podiatric Care*, 2024 WL 2813721, at *3; *see also Rowe* VII, 2025 U.S. Dist. LEXIS 38856, at *4, 2025 WL 692051 ("The notion that the court ought not consider the plans because they were not attached to the complaint is a statement too ridiculous to warrant serious consideration. The plans provide the insurance coverage for the patients and so are integral to the complaint that seeks to recover for surgeries performed on them. If this were not so, there would have been no reason for the alleged employees of Rowe Plastic Surgery to call and seek verification of benefits from the plan administrators in the first place").

Here, however, Plaintiffs challenge the admissibility of the Plan document provided, arguing that the plan document offered is inadmissible hearsay. Pl. Opp. at 20-21. Where "there is a dispute as to the relevance, authenticity, or accuracy of the documents relied upon, the

---

[4] In addition, in the Declaration in Opposition to the Motion to Dismiss the Amended Complaint, by Bredan J. Kearns, Plaintiffs assert that:

> Defendant's Exhibit A to the Petrozelli affidavit, which was served in support of defendant's motion, was an 8 page PDF. The exhibit purports to be a plan document but the document is incomplete. One of the pages of that PDF was a Table of Contents, which indicated the document was at least 84 pages. While the Table of Contents refers to a section called "What the plan pays and what you pay" those pages were not included in the Exhibit.

Kearns Dec. ¶ 5. Defendant does not address the incomplete exhibit in its reply, however, the Court notes that the Petrozelli Declaration indicates the document attached is a plan summary and does not purport to be the entire plan. ECF No. 33-3, at ¶ 2.

[5] Plaintiffs' Memorandum of Law in Opposition to Motion to Dismiss does not contain page numbers, therefore, the cites throughout are references to the ECF page number.

district court may not dismiss the complaint with those materials in mind." *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 231 (2d Cir. 2016); *see also Oberlander v. Coinbase Glob. Inc.*, No. 23-184, 2024 U.S. App. LEXIS 8200, 2024 WL 1478773, at *4 (2d Cir. Apr. 5, 2024) (emphasizing that "even if a document is integral to the complaint, it must be clear on the record that no dispute exists regarding the authenticity or accuracy of the document" and "[i]t must also be clear that there exist no material disputed issues of fact regarding the relevance of the document") (quoting *DiFolco v. MSNBC Cable LLC,* 622 F.3d 104, 111 (2d Cir. 2010)).

In *Rowe* XX, 2025 U.S. Dist. LEXIS 165987, at *25-27, 2025 WL 2452406, the Court determined that although the plan document was plainly integral to the complaint, "there is no permissible basis to conclude that the Patient was covered under the Plan Document, either as a participant or beneficiary." *Id*. The court noted that "[t]he Plan Document . . . does not mention the Patient and the only information before the Court linking the Patient to the policy is Aetna's declaration." *Id*. at *28. Similarly, here, while the Declaration of Elizabeth C. Petrozelli provides that "[i]n 2021, based on Aetna's business records, patient A.A. was enrolled in a health benefits plan sponsored and funded by Memorial Sloan Kettering Cancer Center," there is no reference in the Amended Complaint tying A.A. to the plan document offered by Defendant. As in *Rowe* XX, there is no reference in the Amended Complaint indicating A.A. was an employee of Memorial Sloane Kettering Cancer Center (the plan document provided) and no indication whatsoever that this is in fact the plan governing A.A.'s claim.

In this instance, the Court recommends that the Plan submitted by Defendant should not be considered for purposes of the motion to dismiss.[6]

---

[6] "Without consideration of the Plan Document, the Court does not reach Aetna's preemption defense because whether the Patient's health insurance plan with Aetna is governed by ERISA and therefore subject to express preemption 'is [not] evident from the face of the [Amended Complaint].'" *Rowe* XX, 2025 U.S. Dist. LEXIS 165987, 2025 WL 2452406 (quoting *Melendez v. Sirius XM Radio, Inc.*, 50 F.4th 294, 300 (2d Cir. 2022)

### b.  Breach of Contract Claim and Promissory Estoppel Claim

In *Rowe* V, the Second Circuit concluded that a call to verify insurance benefits and reimbursement rates failed to state a claim for breach of contract or promissory estoppel because the "allegations fall short of the definiteness typically required to create an offer, such as details of the specific service and the price or an explicit undertaking of a duty," and "[a]bsent an offer, there can be no contract between the [p]roviders and Aetna." 2024 U.S. App. LEXIS 24523, 2024 WL 4315128, at *3 (citing *Sokoloff v. Harriman Ests. Dev. Corp.*, 96 N.Y.2d 409, 754 N.E.2d 184, 187-88, 729 N.Y.S.2d 425 (N.Y. 2001)). In an effort to side step the ruling of the Second Circuit, Plaintiffs argue that language at issue here is different than the language before the Second Circuit because Defendant's representative did not provide a disclaimer that "this is not a guarantee of payment" and because "the deliberate nature of the inquiry—makes clear this was a standalone reimbursement commitment, not part of a generic summary of benefits." Pl. Opp. at 11. Despite these purported "differences" Plaintiffs cannot avoid the plethora of cases cited by this Court in footnote 1, each finding that benefit confirmation calls failed to form a binding contract. *See, e.g., Rowe* XX, 2025 U.S. Dist. LEXIS 165987, 2025 WL 2452406, at *13-17 (dismissing breach of contract claim where provider asked about benefits and Aetna employee recounts in network and out of network benefits available, as well as deductible amounts and out-of-pocket maximums because "the scope of the December 21, 2020 call was [Aetna] telling [provider] the Patient's benefits and reimbursement rates just as Aetna's employee did with Plaintiffs' representative in the call at issue in *Rowe* I and II"). The call described in *Rowe* XX, is strikingly similar to the call in this action, where the provider stated the call was

---

("Although preemption is an affirmative defense, this doctrine 'can still support a motion to dismiss if the [relevant preemption] statute's barrier to suit is evident from the face of the complaint.'")); *see also Rowe* I, 705 F. Supp. 3d at 202 (determining that it would be "premature for the [c]ourt to engage in a preemption analysis" because "there [was] no proper evidence before the Court that [the patient's] plan [was] governed by ERISA").

12

about benefits, asked for the benefits for in-network as well as out of network providers, and asked whether the rate was based on "usual and customary rates or Medicare rates. Petitt Decl., Exh. A, Transcript 4-6. Plaintiffs' allegations with respect to the call on August 3, 2021 fail to establish that Plaintiffs and Defendant agreed to a specific reimbursement rate for A.A.'s surgery and therefore fail to state a claim for breach of contract or promissory estoppel.

Plaintiffs also argue that subsequent calls with Defendant may support Plaintiffs' claim but since Aetna has not provided a transcript of those calls an adverse inference may be drawn. Pl. Opp. at 12. Plaintiffs' argument that the Court should draw an adverse inference from Aetna's failure to provide the transcript of these calls is unsupported by any case law.  The Court's role on a motion to dismiss is to evaluate the pleadings before it, assuming the truth of each statement of fact. Accordingly, the Court assumes that the calls related to events alleged by Plaintiffs – the surgery had been approved, ECF No. 28, Am. Compl. ¶ 74, the surgery would be performed at Hudson Regional Hospital, *id*. at ¶ 75, and the surgery was to be performed by Drs. Rowe and Perez, *id.* at 76. These calls do not address the amount to be paid, or any benefit to Aetna.

Just as in *Rowe* XII, 2025 U.S. Dist. LEXIS 108035, at *19, 2025 WL 1603920, Plaintiffs' reliance on the follow up calls, which by Plaintiffs' own admission related to approval the surgery, ECF No. 28, Am. Compl. ¶ 74, location of the surgery, *id*. at ¶ 75, and doctors to perform the surgery, *id.* at 76, falls short. These calls do no provide the missing details necessary to support Plaintiffs' claim for breach of contract - allegations that Aetna "made an offer or promise to pay a particular amount" or "that a service was provided to [Aetna] at [Aetna]'s request," *Rowe* II, 2024 U.S. Dist. LEXIS 17897, 2024 WL 382143, at *2 (*citing Rowe* I, 705 F. Supp. 3d 194); *see also Rowe* XXIV, 2025 U.S. Dist. LEXIS 230866, at *21, 2025 WL 3268083 ("Plaintiffs implicitly concede that there was only one conversation even remotely concerning

13

price, . . . But a legally insufficient allegation—that sole phone call—plus even less sufficient allegations does not a contract make"). Accordingly, the undersigned respectfully recommends that Plaintiffs' breach of contract and promissory estoppel claims be dismissed.

### c. Unjust Enrichment Claim

"To plead an unjust enrichment claim, the plaintiff must show: (1) the defendant was enriched, (2) at plaintiff's expense, and (3) equity and good conscience militate against permitting defendant to retain what plaintiff is seeking to recover." *Rowe* V, 2024 U.S. App. LEXIS 24523, 2024 WL 4315128, at *3. The claim requires showing both that the defendant received a "specific and direct" benefit from the plaintiff and that "the services were performed for the defendant, and not at the behest of someone other than the defendant." 2024 U.S. App. LEXIS 24523, 2024 WL 4315128, at *3-4 (internal quotation marks omitted). As the Second Circuit held in *Rowe* V, the plaintiffs' "unjust enrichment claim fails for two reasons—Aetna neither benefitted from the Providers' services nor asked the Providers to perform the surgery," as it was the patient who both "received the benefit of the Providers' direct services" and requested the surgery. *Id.*

Defendant argues that Plaintiffs' unjust enrichment claim fails for these same two reasons – "Aetna neither benefited from Plaintiffs' services nor asked Plaintiffs to perform them." Def. Mem. at 19-21. According to Plaintiffs this argument fails because "Aetna clearly benefited. But for the Providers rendering the surgery, Aetna could not have repriced the claim and collected its fee. Also, Aetna fulfilled its obligations to its insured using Plaintiffs' services—without paying the promised amount." Pl. Opp. at 28.

Numerous courts that have considered Plaintiffs' claim for unjust enrichment have concluded that Plaintiffs "rely solely on allegations of an abstract and attenuated indirect benefit

Aetna received," and "make no allegations that Aetna requested their services," and that the plaintiffs' "allegations similarly fail" to plead sufficiently "the elements of an unjust enrichment claim." *Rowe* V, 2024 U.S. App. LEXIS 24523, 2024 WL 4315128, at *3-4; *see also, e.g., Rowe* XXIV, 2025 U.S. Dist. LEXIS 230866, 2025 WL 3268083; *Rowe* XV, 2025 U.S. Dist. LEXIS 122813, 2025 WL 1786416, at *2. The allegations rejected by these Courts are indistinguishable from those asserted here, *compare* "Aetna designed and implemented a scheme, using an Aetna retained non-party entity . . . to unjustly enrich themselves by paying Plaintiffs less than the reasonable value of the surgical services provided to A.A. and retaining the benefits obtained as a result, i.e., allegedly earned fees," Am. Compl. ¶ 50, *with Rowe* XXIV, 2025 U.S. Dist. LEXIS 230866, 2025 WL 3268083 dismissing claim where "Plaintiffs allege that Aetna 'directly profited' from the 'difference between the Plaintiffs' billed charges and the artificially depressed amounts reimbursed by Aetna,' and that '[t]he less Aetna paid Plaintiffs, the more it profited.'" Plaintiffs have failed to allege that Defendant directly benefited from the services provided to A.A. or the Aetna requested the services. Accordingly, the undersigned respectfully recommends that Plaintiffs' claim for unjust enrichment be dismissed.

### d. Fraudulent Inducement

To establish a prima facie case of fraudulent inducement under New York law, the Plaintiff must allege "(1) a material misrepresentation of a presently existing or past fact; (2) an intent to deceive; (3) reasonable reliance on the misrepresentation by [the plaintiff]; and (4) resulting damages." *Johnson v. Nextel Commc'ns, Inc.*, 660 F.3d 131, 143 (2d Cir. 2011). To meet Rule 9(b)'s heightened pleading standard, these elements must be alleged with specificity. Namely, the plaintiff must "(1) detail the statements (or omissions) that the plaintiff contends are fraudulent, (2) identify the speaker, (3) state where and when the statements (or omissions) were

15

made, and (4) explain why the statements (or omissions) are fraudulent." *Harsco Corp. v. Segui,* 91 F.3d 337, 347 (2d Cir. 1996); *accord Mills v. Polar Molecular Corp*., 12 F.3d 1170, 1175 (2d Cir. 1993); *Lerner v. Fleet Bank, N.A*., 459 F.3d 273, 290 (2d Cir. 2006); *Shields v. Citytrust Bancorp*., 25 F.3d 1124, 1128 (2d Cir. 1994). "In short, a plaintiff must set forth the who, what, when, where and how of the alleged fraud." *Telenor E. Invest AS v. Altimo Holdings & Invs. Ltd.,* 567 F. Supp. 2d 432, 441-42 (S.D.N.Y. 2008) (citations and quotation marks omitted). "Fraud must be pleaded with particularity while malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." *Houraney v. Burton & Assoc., P.C*., 701 F. Supp. 2d 258, 260 (E.D.N.Y. 2009) (citing Rule 9(b)).

Recently, in *Rowe* XXV, 2026 U.S. Dist. LEXIS 10373, Magistrate Judge Merkl recommended dismissal of Plaintiffs' fraudulent inducement claim because "Plaintiffs have simply restated their breach of contract claim as a claim for fraudulent inducement." *Id*. at 2026 U.S. Dist. LEXIS 10373, at *27. The court relied upon the decision in *Rowe* XVIII, 2025 U.S. Dist. LEXIS 134663, 2025 WL 1940325, at *11 finding that "[t]he only difference is that in the breach of contract claim, Plaintiffs allege that this statement amounted to an offer to pay; whereas in the fraudulent inducement claim, Plaintiffs allege that Aetna intended to deceive Plaintiffs with the statement." *Id*., 2025 U.S. Dist. LEXIS 134663, 2025 WL 1940325, at *10; *see also Rowe* XV, 2025 U.S. Dist. LEXIS 122813, at *4, 2025 WL 1786416 ("a fraud claim may not be used as a means of restating what is, in substance, a claim for breach of contract"); *Rowe* XI, 2025 U.S. Dist. LEXIS 108023, at * 23, 2025 WL 1603919 (same); Rowe X, 2025 U.S. Dist. LEXIS 86592, at *29, 2025 WL 1715445 ("fraud claims will fail, where a breach of contract claim is disguised as fraudulent inducement"). Plaintiffs' claim here suffers from the same infirmity, Plaintiffs allege nothing more than the call which forms the basis of Plaintiffs'

16

alleged breach of contract claim, was also made intentionally to induce Plaintiffs to provide services to A.A. WCF No. 28, Am. Compl. ¶¶ 83-97. Accordingly, the undersigned respectfully recommends that Plaintiffs' claim for fraudulent inducement be dismissed.

### e. Conversion

Finally, Plaintiffs assert a claim for conversion. ECF No. 28, ¶¶ 98-105. Defendant has moved to dismiss this claim, Def. Mem. at 22-23, and Plaintiffs have not responded to this argument. Def. Reply Mem. at 7n.2. Other courts in this Circuit that have considered Plaintiffs' conversion claim have concluded that Plaintiffs' conversion claim is based entirely upon Plaintiffs' claim that it has a right to receive the payment it is demanding from Defendant which cannot support a claim for conversion under New York law, and, therefore the claim must fail. *See, e.g., Rowe* XXIII*,* 2025 U.S. Dist. LEXIS 223964, at \*11, 2025 WL 3168172*; Rowe* XI*,* 2025 U.S. Dist. LEXIS 108023, at \*25, 2025 WL 1603919; *Rowe* XIX, 2025 U.S. Dist. LEXIS 152415, 2025 WL 2242507, at \*2. The Court sees no reason to depart from this wealth of authority. Accordingly, the undersigned respectfully recommends that Plaintiffs' claim for conversion be dismissed.

### OBJECTIONS

Pursuant to 28 U.S.C. § 636(b)(1)(c) and Rule 72 of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report and Recommendation to file written objections.  Such objections shall be filed with the Clerk of the Court via ECF.  Any requests for an extension of time for filing objections must be directed to Judge Seybert prior to the expiration of the fourteen (14) day period for filing objections. Failure to file objections within this period waives the right to appeal the District Court's Order. *See* 28 U.S.C. § 636(b)(1); Fed R. Civ. P 72; *Mejia v. Roma Cleaning, Inc.*, No. 17-3446, 2018

17

U.S. App. LEXIS 28235, 2018 WL 4847199, at *1 (2d Cir. Oct. 5, 2018) ("Plaintiff has waived any objections to the Magistrate's finding" by failing to timely object); *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Beverly v. Walker*, 118 F.3d 900, 901 (2d Cir. 1997); *Savoie v. Merchants Bank*, 84 F.3d 52, 60 (2d Cir. 1996).


Dated:   Central Islip, New York
         February 3, 2026


                                    /s
                            ARLENE R. LINDSAY
                            United States Magistrate Judge